IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DORIS CROSLEY, et al., | | |
| Plaintiffs, | | No. C 05-04051 JSW |
| v. | | **NOTICE OF TENTATIVE RULING AND QUESTIONS FOR HEARING** |
| CITY OF PITTSBURG, et al., | | |
| Defendants. | / | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON AUGUST 31, 2007 AT 9:00 A.M.

The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority.

**The Court has asked a number of questions pertaining to whether Plaintiffs do continue to assert specific causes of action against Defendants and whether Plaintiffs do continue to assert causes of action premised on the factual allegations in the First Amended Complaint.** *See* **Defendants' Motion, Questions 3, 4, and 10. If Plaintiffs are**

**withdrawing any causes of action, or if they will not be pursuing causes of action based upon a particular theory of liability, the Court requests that they file notice of that intent, in writing, in advance of the hearing.**

The Court **reserves issuing a tentative ruling on Defendants' motion** and **tentatively DENIES** Ms. Crosley's motion.

Each party shall have twenty (20) minutes to address the following questions:

**Plaintiff Crosley's Motion for Partial Summary Judgment.**

1. In support of her motion, Ms. Crosley argues that she is "taking the facts in the light most favorable to Defendants." (*See, e.g.,* Reply Br. at 2:5-13.) If the Court accepts as true the Defendants' version of the facts regarding the alleged warrantless entry, those facts could support a finding that they broke the threshold of Ms. Crosley's apartment. However, the facts presented in opposition to Defendants' motion, *and incorporated by reference in support of Ms. Crosley's motion*, suggest that the Defendant Officers did not enter Ms. Crosley's apartment. Because Defendants are the non-moving party, the Court must take the facts in the light most favorable to them. Therefore, what is Ms. Crosley's best argument that the evidence submitted in support of her opposition to Defendants' motion, which she incorporated by reference into her motion, does not create a genuine issue of material fact on the alleged warrantless entry into her home?

**Defendants' Motion for Summary Judgment**

1. In their reply brief, in the section addressing racial discrimination under state law, Defendants assert that Plaintiffs' Fourth, Fifth, and Sixth Causes of Action should be dismissed. Plaintiffs concede that they will dismiss the Third and Fifth Causes of Action. Plaintiffs' Fourth and Sixth Causes of Action appear to extend beyond allegations of racial discrimination. Are Defendants arguing that the Court should grant summary judgment on these causes of action based on their allegations that Plaintiffs have not proved the merits of their Section 1983

claims on the other bases asserted (*i.e.* the alleged Fourth Amendment and First Amendment violations), or is this simply an error on Defendants' part as to which state law causes of action encompassed the race discrimination claims?

2. Are Defendants moving for summary judgment on Plaintiffs' Seventh Cause of Action (False Arrest and Imprisonment)? If so, where in Defendants' motion can the Court find argument on that cause of action?

3. Is Mr. Collins maintaining his cause of action for intentional infliction of emotional distress? If so, does he contend that the argument at pages 24-25 of the opposition brief addresses that claim as to both Plaintiffs? If not, why should the Court not grant Defendants' motion as unopposed as to that cause of action?

4. Are Plaintiffs pursuing their Section 1983 claim to the extent it is premised on alleged violations of freedom of association and "interferences with the zone of privacy," or are they, as Defendants assert in reply, abandoning those claims?

    a. If Plaintiffs are pursuing those claims, what is their best argument that Defendants' motion should be denied as to those claims?

5. With respect to Ms. Crosley's excessive force claim, is she relying exclusively on an alleged violation of Fourth Amendment rights, as her opposition brief suggests, or does she also premise this claim on substantive due process grounds? *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843-44, 855 (1998) (holding that analysis was not governed by *Graham* because no search or seizure occurred; plaintiff's section 1983 claim was premised upon substantive due process and governed by the "shocks the conscience" standard).

    a. If Ms. Crosley also relies on a substantive due process theory, where in the opposition can the Court find Ms. Crosley's legal argument on that basis?

    b. If the Court were to conclude that the substantive due process argument was raised in Ms. Crosley's opposition, what is her best argument that the evidence shows that the Defendant Officers' conduct was not merely

3

1 negligent and that it satisfies the "shocks the conscience" test? *See*
2 *generally Daniels v. Williams*, 474 U.S. 327 (1986) (holding that
3 although there is no specific state of mind requirement to violate Section
4 1983, mere negligence may not be sufficient to state a claim).

    c.  If the Court were to conclude that Ms. Crosley has not addressed the excessive force claim based on an alleged violation of her substantive due process rights, what is Defendants' best argument that she should not be permitted to proceed at trial on such a claim, even if the Court granted their motion on the alleged violations of her Fourth Amendment rights? (*See* First Amended Complaint, ¶ 26b (asserting violations of "right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution").

6.  With respect to her excessive force claim premised upon alleged violations of her Fourth Amendment rights, on what basis does Ms. Crosley contend that she was "seized," as a matter of law? *See, e.g., Edenfield v. Estate of Willets*, 2006 WL 1041724 at *7-*8 (D. Hawaii Apr. 14, 2006) (noting that "the Ninth Circuit has not addressed whether inadvertent injuries that a police officer inflicts on a hostage or innocent bystander while attempting to stop another person constitute a seizure under the Fourth Amendment" and discussing out-of-circuit authorities that have addressed issue and analyzing whether plaintiffs were the "intended object" of the defendants' conduct). *See also Milstead v. Kibler*, 243 F.3d 157, 163-64 (4th Cir. 2001) (distinguishing situation where an officer uses excessive force directed toward person intended to be seized but injures another innocent bystander in the process from situation where officer uses excessive force directed at innocent person mistakenly believed to be a suspect; latter situation will give rise to a seizure while former will not); *Landol-Rivera v. Cruz-Cosme*, 906 F.2d 791, 794-796 (1st Cir. 1990) (rejecting argument that innocent hostage

4

who was shot by police, when police were aiming at another, was "seized"); *cf. Tubar v. Clift*, 453 F. Supp. 2d 1252, 1256 (W.D. Wash. 2006) (rejecting defendants' arguments on "innocent bystander" theory and denying motion for partial summary judgment on qualified immunity where both occupants of vehicle were suspects in possible crime).

    a. Does Ms. Crosley have any additional authority to support her position on this issue?

    b. Does Ms. Crosley have any authority to suggest that the law on this point was clearly established as of July 1, 2005?

7. If the Court concludes that Ms. Crosley was not seized, is she also relying on the alleged warrantless entry to support her excessive force claim?

    a. If so, and in light of Defendants' position that the facts are disputed as to whether the Defendant Officers entered her home, what is Defendants' best argument that summary judgment should be granted on that claim?

    b. Does either party have any authority to suggest that the reasoning of the "innocent bystander" line of cases, cited in question 6, would not apply with equal force to the warrantless entry claim?

8. Mr. Collins testified that Officer Pratt advised him that he (Officer Pratt) *would*, rather than *could*, arrest Mr. Collins for trespassing. (*See* Declaration of Peter J. Edrington in Support of Defendants' Motion, Ex. 6 (K. Collins Depo. at 90:1-7). Taking those facts in the light most favorable to Mr. Collins, what is Defendants' best argument that Mr. Collins would have felt free to leave or terminate the encounter?

9. With respect to Mr. Collins' claim that the Defendant Officers violated his First Amendment rights, what retaliatory action does Mr. Collins contend the Defendant Officers took in response to his verbal complaints about their conduct? *See McKinney v. Nielsen*, 69 F.3d 1002, 1006-07 (9th Cir. 1995).

5

10. Do Plaintiffs continue to maintain their claims against Chief Baker and the City premised on alleged patterns and practices regarding "the use of unnecessary and excessive force," as alleged in paragraph 29 of the First Amendment Complaint?

   a. If so, what specific evidence in the record supports a finding that such patterns and practices exist?

11. Is the Court correct that Plaintiffs' claims against Chief Baker stem from policy level activities, rather than his personal involvement in the July 1, 2005 incident?

12. With respect to the claims against Chief Baker and the City do Plaintiffs allege that a specific "policy" existed or are their claims premised upon a "custom or practice" theory? If the former, is there a specific written policy at issue?

   a. How do Plaintiffs respond to Defendants' argument that the deposition testimony on which they rely does not state that Chief Baker would expect officers to arrest or detain an individual who declined to identify themselves or who asked to be left alone?

   b. What is Plaintiffs' response to the Defendants' reply argument on *Monell* liability?

13. Is Ms. Crosley's cause of action alleging assault and battery separate and distinct from her Section 1983 excessive force claim?

   a. Would Ms. Crosley agree that the evidence in the record more appropriately speaks to cause of action for battery, rather than assault? If not, where in the evidence is there evidence that Ms. Crosley was threatened with harm by the Defendant Officers? *See* CACI 1301.

   b. If Ms. Crosley's battery claim is asserted as concomitant to her federal claim (*i.e.* that the officers used unreasonable force in effectuating an arrest and therefore are liable under state law for assault and/or battery) and if the Court concludes that the Defendants are not entitled to judgment as a matter of law on Ms. Crosley's excessive force claim, would they concede they are not entitled to judgment as a matter of law

        on her cause of action for assault and battery? *See, e.g., Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273-1274 (1998) (holding that a plaintiff asserting a state law battery claim against a police officer must establish that the police officer used unreasonable force).

    c.    If Ms. Crosley is asserting her cause of action for assault and/or battery as an alternative basis of liability, what is Defendants' best argument that the evidence that Officer Pratt allegedly stated "So f-ing what," after it was brought to his attention that Ms. Crosley had been knocked to the ground, not sufficient to create a disputed issue of fact on the issue of whether he intended to harm her? *See* CACI 1300.

14.    Plaintiffs assert that "[v]iolations of civil rights are outrageous." Do Plaintiffs have any authority that supports that proposition as a matter of law?

15.    Are there any other issues the parties wish to address?

**IT IS SO ORDERED.**

Dated: August 29, 2007

                                   JEFFREY S. WHITE
                                   UNITED STATES DISTRICT JUDGE