United States District Court
For the Northern District of California

1
2
3
4          **NOT FOR PUBLICATION**
5
6          IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9    DORIS CROSLEY, et al.,
10             Plaintiffs,                    No. C 05-04051 JSW
11     v.                                     **ORDER DENYING PLAINTIFF**
                                              **DORIS CROSLEY'S CROSS-**
12    CITY OF PITTSBURG, et al.,              **MOTION FOR PARTIAL**
                                              **SUMMARY JUDGMENT AND**
13             Defendants.                    **GRANTING IN PART AND**
                                              **DENYING IN PART**
14                                            **DEFENDANTS' MOTION FOR**
                                              **SUMMARY JUDGMENT**
15
16    _____/
17                        **INTRODUCTION**
18          This matter comes before the Court upon consideration of the motion for partial
19    summary judgment filed by Plaintiff Doris Crosley ("Ms. Crosley") and upon consideration of
20    Defendants' motion for summary judgment.  Having considered the parties' papers, relevant
21    legal authority, and the record in this case, and having heard oral argument, the Court DENIES
22    Ms. Crosley's motion and HEREBY GRANTS IN PART AND DENIES IN PART Defendants'
23    motion.
24                        **BACKGROUND**
25    **A.    Procedural History.**
26          On October 7, 2005, Plaintiffs, Ms. Crosley and Kenneth Collins ("Mr. Collins")
27    (collectively "Plaintiffs"), filed this action against Defendants, the City of Pittsburg ("City"),
28    Chief Aaron Baker, in his capacity of Chief of Police for the City ("Chief Baker") (Chief Baker

and the City are referred to collectively as "the City Defendants"), Officer Wesley Bancroft

("Officer Bancroft") and Officer Daniel Pratt ("Officer Pratt") (collectively the "Defendant

Officers"), individually and in their capacities as police officers.

On March 13, 2006, Plaintiffs filed their First Amended Complaint ("FAC"), which is

the operative pleading in this case.  In their FAC, Plaintiffs assert the following claims for

relief: (1) violations of 42 U.S.C. § 1983 by the Defendant Officers; (2) violations of 42 U.S.C.

§ 1983 by the City Defendants; (3) violations of 42 U.S.C. § 1981; (4) violations of Article I,

Sections 7(a) and 7(b) of the California Constitution; (5) violations of California Civil Code §

51.7; (6) violations of California Civil Code § 52.1; (7) False Arrest and Imprisonment; (8)

Assault and Battery as to Ms. Crosley; (9) Intentional Infliction of Emotional Distress as to Mr

Collins; (10) Intentional Infliction of Emotional Distress as to Ms. Crosley; (11) Negligence;

(12) Negligent Infliction of Emotional Distress as to Mr. Collins; (13) Negligent Infliction of

Emotional Distress as to Ms. Crosley; (14) Negligent Selection, Training, Retention,

Supervision, Investigation and Discipline by the City Defendants; and (15) Trespass as to Ms.

Crosley.[1]

At the hearing on this motion, Plaintiffs confirmed that they will dismiss their third and

fifth claims for relief.  Plaintiffs also confirmed that will not pursue their Section 1983 claims,

to the extent those claims are premised on alleged violations of freedom of association or

"interferences with the zone of privacy," as is alleged in the FAC.  Finally, Ms. Crosley

confirmed that the eighth claim for relief is premised on an alleged battery, rather than an

alleged assault.

**B.    Factual Background.**

Ms. Crosley lives in Apartment 122 of the Loveridge Terrace Apartments complex (the

"Complex"), in Pittsburg, California.  On the evening of July 1, 2005, Mr. Collins and a group

---

[1]      The Defendant Officers are the only defendants referenced in the third
through thirteenth claims for relief.  However, Plaintiffs also assert a claim for relief entitled
"Respondeat Superior" as to the City Defendants in which they allege that the City
Defendants are liable for any cause of action asserted against the Defendant Officers, on the
ground the Defendant Officers were acting in the course and scope of their employment.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  of men were sitting outside Apartments 121 and 122.  (Declaration of Peter P. Edrington in

2  Support of Motion for Summary Judgment ("Edrington Mov. Decl."), Ex. 1 (Deposition of

3  Wesley Bancroft ("Bancroft Depo.") at 44:2-7, 45:7-24), Ex 2 (Deposition of Daniel Pratt

4  ("Pratt Depo.") at 55:6-10); Declaration of Charles Geerhart in Opposition to Defendants'

5  Motion ("Geerhart Opp. Decl."), Ex. 1 (Deposition of Kenneth Collins ("K. Collins Depo.") at

6  65:25-66:23).)  One of the men with Mr. Collins was Fred Long, who lives in Apartment 121.

7  The parties dispute whether anyone in the group was drinking and they also dispute how loud

8  Mr. Collins and his friends were that evening.  There is no dispute that the Complex is located

9  in a high crime area.  (*See, e.g.,* Edrington Mov. Decl., Ex. 6 (Deposition of Kenneth Collins

10  ("K. Collins Depo.") at 56:1-6).)

11        One of the security guards employed at the Complex, Judy Wimberly, testified that she

12  asked Mr. Collins and his friends to move their gathering inside and they refused to do so.  Ms.

13  Wimberly testified that she called the Pittsburg Police Department for assistance.  (Edrington

14  Mov. Decl., Ex. 4 (Deposition of Judy Wimberly ("Wimberly Depo.") at 88:2-19, 90:1-14);

15  Geerhart Opp. Decl., Ex. 13 (Wimberly Depo. at 77:2-90:14).)  Whether in response to Ms.

16  Wimberly's request or whether due to the fact that they already were on routine patrol in the

17  Complex, the Defendant Officers arrived on the scene and approached Mr. Collins and the rest

18  of the men.[2]  Thereafter, the parties' accounts of the events of that evening differ.

19        **1.    The Defendant Officers' Version of the Events.**

20        According to the Defendant Officers, Mr. Collins "became angry" that they "were

21  contacting him," and they claim that Mr. Collins accused them of harassing him.  In response,

22  Officer Pratt stated that he asked Mr. Collins for identification, ostensibly to determine whether

23  Mr. Collins actually resided in the Complex.[3]  (*See* Edrington Mov. Decl., Ex. 1 (Bancroft

24

25        [2]      The Court finds that this dispute is immaterial to the resolution of the instant
26  motion.

27        [3]      On or about June 23, 2005, the managers of the Complex signed a document
    entitled "Declaration and Request for City Assistance to Enter and Remove Trespassers."
28  (Edrington Mov. Decl., Ex. 3 (Deposition of Ellen McQuoid ("McQuoid Depo.") at 26:7-12,
    and McQuoid Depo. Ex. 2).)  In that declaration, Ms. McQuoid, as manager of the Complex,
    requested that the City "remove any and all trespassers, other than tenants from the

3

United States District Court
For the Northern District of California

1    Depo. at 41:2-21, 48:2-4), Ex. 2 (Pratt Depo. at 58:16-61:23); Geerhart Opp. Decl., Ex. 16

2    (Incident Reports).)  Defendants do not dispute that Mr. Collins entered Ms. Crosley's

3    apartment.  (Edrington Mov. Decl., Ex. 1 (Bancroft Depo. at 54:13-55:6).)

4            According to the Defendant Officers, at some point after Mr. Collins entered the

5    apartment, Jelani Collins ("Jelani"), Ms. Crosley's grandson, arrived.  The Defendant Officers

6    contend that they believed Jelani was intoxicated, knew he was under 21, and decided to arrest

7    him for public intoxication pursuant to California Penal Code § 647(f).[4]  Officer Bancroft

8    claims that he attempted to grab Jelani, that Jelani ran for Ms. Crosley's apartment, and that he

9    followed.  Officer Pratt testified that he attempted to grab Jelani as well.  (*See* Edrington Mov.

10   Decl., Ex. 1 (Bancroft Depo. at 55:14-58:10); Geerhart Opp. Decl., Ex. 16 (Incident Reports).)

11           According to the Defendant Officers, in their attempt to arrest Jelani, they asked Ms.

12   Crosley to move out of the doorway.  They testified that she did not do so and was "somehow"

13   knocked to the ground.  (Edrington Mov. Decl., Ex. 1 (Bancroft Depo. at 56:11-60:17), Ex. 2

14   (Pratt Depo. at 74:2-24, 77:23-78:15); Geerhart Opp. Decl., Ex 16 (Incident Reports).)  For

15   example, Officer Bancroft stated in his police report that he "grabbed [Jelani's] right sleeve ..

16   And Ofc. Pratt grabbed [Jelani's] left sleeve," and that they "attempted to take [Jelani] into

17   custody by pulling him towards us. ... As Ofc. Pratt and I pulled [Jelani] towards us, [Ms.

18   Crosley] was still standing in front of [Jelani] and somehow fell to the ground."  (Geerhart Opp.

19   Decl., Ex. 16 (Bancroft Incident Report at 3).)  Each of the Defendant Officers testified that

20   they did not think that the situation was a threat to Ms. Crosley.  (Edrington Mov. Decl., Ex. 1

21   (Bancroft Depo. at 64:16-18), Ex. 2 (Pratt Depo. at 83:22-84:3).)

22   _____

23   [Complex] other than legitimate tenants [*sic*]."  (McQuoid Depo. Ex. 2).  Ms. McQuoid also
     gave the City and "its agents, officers, officials, and employee's permission to enter the

24   [Complex] and its buildings for purposes of removing trespassers," for a period of thirty (30)
     days.  (*Id.*)

25        [4]    California Penal Code § 647(f), provides that a person "who is found in any
     public place under the influence of intoxicating liquor, any drug, controlled substance,

26   toluene, or any combination of any intoxicating liquor, drug, controlled substance, or
     toluene, in a condition that he or she is unable to exercise care for his or her own safety or

27   the safety of others, or by reason of his or her being under the influence of intoxicating
     liquor, any drug, controlled substance, toluene, or any combination of any intoxicating

28   liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street,
     sidewalk, or other public way," is guilty of disorderly conduct, which is a misdemeanor.

**United States District Court**
For the Northern District of California

1

2.      **Plaintiffs' Version of the Events.**

2      Mr. Collins testified that, when they approached him, the Defendant Officers asked him

3    and his friends to move on to their respective balconies.  According to Mr. Collins, he advised

4    the Defendant Officers that he did not believe they had the right to tell him to move from the

5    area in front of the apartments.  (Geerhart Opp. Decl., Ex. 1 (K. Collins Depo. at 85:11-89:24).)

6    Mr. Collins claims that in response, Officer Pratt said "we're just going to take you to jail for

7    trespassing."  (*Id.* at 90:1-7.)[5]  Mr. Collins responded "Okay.  Well, then I am going to go get

8    my mother so she can witness this."  Mr. Collins stated that he then went into Ms. Crosley's

9    apartment to get his identification.  (*Id.* at 94:9-16.)  Mr. Collins admitted that neither of the

10   Defendant Officers told him that he was under arrest at the time he went to get his

11   identification.  (*Id.* at 94:17-19.)  When Mr. Collins went inside to get his identification, Ms.

12   Crosley came to the door.  (Geerhart Opp. Decl., Ex. 6 (Bancroft Depo. at 53:9-54:24), Ex. 7

13   (Pratt Depo. at 63:16-65:3), Ex. 16 (Incident Reports).)

14      As to Ms. Crosley's injury, Mr. Collins testified that he saw Officer Bancroft grab

15   Jelani, and saw Officer Pratt go to assist Officer Bancroft.  According to Mr. Collins, while the

16   Defendant Officers were attempting to grab Jelani, "Officer Pratt went to, I believe assist

17   Officer Bancroft.  And when he did it, he took his arm and he went across my mom (indicating)

18   and knocked her down on the ground, as to move her out the way maybe.  But he knocked her

19   on the ground.  And that's when I responded 'You just knocked my [f—ing] mother down.'

20   And he responded 'So [f—ing] what?'"  (Geerhart Opp. Decl., Ex. 1 (K. Collins Depo. at

21   105:20-107:16).)[6]  Mr. Collins testified that Jelani did not make it into the apartment before Ms.

22   Crosley was knocked to the ground.  (*Id.* at 114:14-21.)  Mr. Collins also testified that he did

23   not hear the Defendant Officers tell Jelani that he was under arrest, and Jelani denied that he

24

25      [5]      The Defendant Officers claim that Officer Pratt told Mr. Collins that he
     needed to produce identification to prove he lived at the Complex but that Officer Pratt did
26   not threaten to arrest Mr. Collins for trespassing.  Rather, the Office Bancroft testified that
     Officer Pratt advised Mr. Collins he could be arrested for trespassing if he did not live there.
27   (*See* Edrington Mov. Decl., Ex. 1 (Bancroft Depo. at 44:10-18, 48:2-11, 54:1-7).)

28      [6]      Jackie Blakemore, another resident of the Complex, testified to overhearing
     this exchange.  (Geerhart Opp. Decl., Ex. 14 (Deposition of Jackie Blakemore at 33:21-
     34:15).)

5

had been drinking that evening.  (*See* Geerhart Opp. Decl., Ex. 1 (K. Collins Depo. at 106:14-

107:9), Ex. 12 (Deposition of Jelani Collins ("J. Collins Depo.") at 32:21-33:9.)

Ms. Crosley testified that Mr. Collins entered her apartment, advised her that the police

were there, and asked her to tell them that he lived there.  She went to the door of her apartment,

opened it, and saw the police.  (Geerhart Opp. Decl., Ex. 3 (Deposition of Doris Crosley

("Crosley Depo.") at 70:16-71:2).)  Ms. Crosley's recalls that she advised Officer Pratt that Mr.

Collins lived with her, and that the next thing she knew, she was on the ground.  (*Id.* at 73:25-

74:7.)  Ms. Crosley testified that she thought Officer Pratt swung his arm, but also stated that

she did not know exactly how he knocked her down.  (*Id.* at 74:9-17, 75:24-77:24.)  Ms.

Crosley also testified that after she was knocked down, Officer Pratt stepped on her leg.  (*Id.* at

80:21-81:19.)

Other witnesses also testified that, as the Defendant Officers attempted to grab Jelani,

the Defendant Officers knocked Ms. Crosley to the ground.  For example, Brittani Collins

testified that she saw Officer Pratt turn, swing his arm, and then Ms. Crosley went down. (*See*

Geerhart Opp. Decl., Ex. 2 (Deposition of Brittani Collins ("B. Collins Depo.") at 43:23-58:7.)[7]

Kennedy Patton testified that Officer Bancroft made contact with Ms. Crosley as he rushed

Jelani, but also stated that he thought the contact with Ms. Crosley was accidental.  (Geerhart

Opp. Decl., Ex. 4 (Deposition of Kennedy Patton ("Patton Depo.") at 28:1-32:17, 62:10-16).)[8]

It is undisputed that Ms. Crosley fractured her leg during the incident.

## ANALYSIS

### A.    Legal Standards Applicable to Motions for Summary Judgment.

Summary judgment is proper when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence

for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*,

[7]    Brittani Collins is Mr. Collins' daughter.

[8]    Kennedy Patton was visiting another resident of the Complex.

United States District Court
For the Northern District of California

477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Id.*  Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

**B.      Evidentiary Issues.**

**1.      Plaintiffs' Requests for Judicial Notice.**

In support of their motion, and in opposition to Defendants' motion, Plaintiffs request that the Court take judicial notice of San Diego County's and Yolo County's sentencing guidelines for California Penal Code § 647(f).  Defendants do not object.  Accordingly, Plaintiffs' requests for judicial notice are GRANTED.[9]

---

[9]      Plaintiffs have not submitted the entirety of Yolo County's sentencing guidelines with the motion.  Those guidelines, however, are available at www.yolo.courts.ca.gov (last visited November 21, 2007).

**United States District Court**
For the Northern District of California

1

2.      **Plaintiffs' Objections to Evidence in Support of Defendants' Motion for Summary Judgment.**

2

3       Plaintiffs object to statements made on page 3, lines 10-12 of Defendants' motion, and

4       the evidence submitted in support thereof.  Plaintiffs assert that this evidence is irrelevant.  The

5       Court SUSTAINS Plaintiffs' objection.  Plaintiffs also object to the statements at page 3, lines

6       12-14 of Defendants' motion, and the evidence submitted in support thereof, regarding the fact

7       that Mr. Collins apparently was not on Ms. Crosley's lease.  Plaintiffs assert that this evidence

8       is hearsay, irrelevant, and unduly prejudicial.  Those objections are OVERRULED.

9       3.      **Defendants' Objections to Plaintiffs' Evidence Submitted in Opposition to Defendants' Motion for Summary Judgment.**

10

11      Defendants object to page 27, line 31 through page 33, line 4, page 40, lines 3-10, and

12      page 46, line 2 through page 47, line 4 of Mr. Collins' deposition testimony, in which Mr.

13      Collins testified about prior contacts he had with members of the Pittsburg Police Department at

14      the Complex.  Defendants contend that this deposition testimony is irrelevant and immaterial.

15      Plaintiffs contend that Defendants engaged in a custom and practice of unlawful seizures, and

16      this testimony is relevant to that claim.  Therefore, Defendants' objection to this testimony on

17      that basis is OVERRULED.  The Court shall address the materiality of this testimony in its

18      analysis of the Defendants' motion.

19      Defendants also object to page 39, lines 9-10 of Kennedy Patton's deposition, which

20      pertains to whether Officer Bancroft stepped on Ms. Crosley's leg, on the ground that it lacks

21      foundation and is speculative  That objection is SUSTAINED.

22      Defendants object to Plaintiffs' Exhibit 15, the preliminary expert report of Lou Reiter,

23      which sets forth his opinions on the police practices at issue in this case.  Defendants argue that

24      the Reiter Report is irrelevant, immaterial, hearsay, and not prepared under penalty of perjury.

25      The expert report is relevant to Plaintiffs' Section 1983 claims against the City Defendants.

26      The Court shall address its materiality in the analysis.  Mr. Reiter did sign the report under

27      penalty of perjury.  It is thus equivalent to a declaration, which is a permissible forms of

28      evidence under Federal Rule of Civil Procedure 56, and Defendants have not objected to any

8

1   particular statement that would constitute hearsay.  Accordingly, Defendants' objections are

2   OVERRULED.[10]

3   **C.    Legal Standards Applicable to Qualified Immunity.**

4          In support of their motion, and in opposition to Plaintiffs' cross-motion, the Defendant

5   Officers argue that they are qualifiedly immune from suit on Plaintiffs' Federal claims.

6   Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

7   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is an immunity from suit rather

8   than a mere defense to liability.  *Id.*  As a result, the Supreme Court has repeatedly stressed the

9   importance of resolving immunity questions at the earliest possible stage in litigation.  *Saucier*

10  *v. Katz*, 533 U.S. 194, 201 (2001) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

11         In *Saucier*, the Supreme Court stated that a court called upon to rule on the issue of

12  qualified immunity must ask the following threshold question: "Taken in the light most

13  favorable to the party asserting the injury, do the facts alleged show the officer's conduct

14  violated a constitutional right?"  *See id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If

15  no constitutional right would have been violated were the allegations established, there is no

16  necessity for further inquiries concerning qualified immunity."  *Id.*  However, if the Court finds

17  that the facts would show the violation of a constitutional right, the next inquiry is to determine

18  "whether the right was clearly established."  *Id.*

19         A constitutional right is clearly established for qualified immunity purposes if "[t]he

20  contours of the right [are] sufficiently clear that [at the time the alleged unlawful action is

21  taken] a reasonable official would understand that what he is doing violates that right."  *Id.* at

22  202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "This is not to say that an

23  official action is protected by qualified immunity unless the very action in question has

24  previously been held unlawful ...; but it is to say that in the light of pre-existing law the

25  unlawfulness must be apparent."  *Anderson,* 483 U.S. at 640.  "In other words, an officer who

26

27         [10]    The Court does not reach Defendants' objections to Exhibit 17, Ms. Crosley's
    medical records, or Exhibit 18, which consists of the City's curfew ordinance and Pittsburg
28  Police Department Policy 455, which relates to curfew violations.  These exhibits were not
    necessary to the resolution of these motions.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  makes a reasonable mistake as to what the law requires under a given set of circumstances is

2  entitled to the immunity defense."  *Boyd v. Benton Co.*, 374 F.3d 773, 781 (9th Cir. 2004) (citing

3  *Saucier*, 533 U.S. at 205).  Thus, a court "must determine whether the law governing the

4  official's conduct was clearly established at the time the challenged conduct occurred."

5  *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citing *Hallstrom v. Garden City*, 991

6  F.2d 1473, 1482 (9th Cir. 1993)).  A court should then address the question "whether, under that

7  clearly established law, a reasonable officer could have believed the conduct was lawful."  *Id.*

8  **D.      Plaintiffs' Motion for Partial Summary Judgment is Denied.**

9          Ms. Crosley moves for partial summary judgment on her Section 1983 claim and argues

10  that the facts demonstrate that the Defendant Officers entered her home without a warrant in

11  order to arrest Jelani on a misdemeanor offense.  The Defendant Officers oppose the merits of

12  Ms. Crosley's motion and also argue that they are entitled to qualified immunity.

13          "The Fourth Amendment prohibits police officers from making a warrantless entry into

14  a person's home, unless the officers have probable cause *and* are presented with exigent

15  circumstances."  *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000) (emphasis in

16  original) (citing, *inter alia*, *Payton v. New York*, 475 U.S. 573, 590 (1980)).  This prohibition,

17  however, does not apply to "arrests made at the doorway, because the doorway is considered a

18  public place."  *Id.* at 955 (citing *United States v. Santana*, 427 U.S. 38, 42 (1976); *United States*

19  *v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir. 1995)).

20          For purposes of her motion, Ms. Crosley states that she accepts "as true everything in

21  the police report and deposition testimony of defendants Pratt and Bancroft."  (Crosley Mot. at

22  2:10-13.)  The Defendant Officers' testimony, and their Incident Reports, suggest that they may

23  have broken the threshold of Ms. Crosley's doorway in their efforts to arrest Jelani for public

24  drunkenness.  (*See* Declaration of Charles Geerhart in Support of Motion for Partial Summary

25  Judgment ("Geerhart Mov. Decl."), Ex. 1 (Bancroft Depo. at 54:13-24, 56:11-59:1), Ex. 2 (Pratt

26  Depo. at 73:25-75:21, 80:2-81:24); Ex. 3 (Bancroft Incident Report at 3, Pratt Incident Report at

27  3).)

28

10

United States District Court

For the Northern District of California

1    Ms. Crosley, however, also submits a police report prepared by Officer Lombardo, in

2    which he suggests that Jelani did not get inside the apartment before the Defendant Officers

3    attempted to grab him.  (*Id.*, Ex. 3 (Lombardo Incident Report at 1).)  Ms. Crosley also

4    incorporated by reference all the evidence submitted in opposition to Defendants' motion, and

5    Ms. Wimberly testified that she did not see Jelani make it into Ms. Crosley's apartment.  (*See,*

6    *e.g.,* Geerhart Opp. Decl., Ex. 14 (Wimberly Depo. at 151:9-18, 157:12-15).  In addition, in

7    opposition to Ms. Crosley's motion, Defendants submit testimony from witnesses that suggest

8    Jelani was not inside Ms. Crosley's apartment when they attempted to grab him.  (*See*

9    Declaration of Peter Edrington in Opposition to Plaintiff's Motion for Partial Summary

10   Judgment ("Edrington Opp. Decl."), Ex. 14 (J. Collins Depo. at 38:2-7, 39:4-40:2), Ex. 15 (B.

11   Collins Depo. at 47:10-12; 50:20-51:1).)

12        The Court concludes that there are genuine issues in dispute about whether the

13   Defendant Officers crossed Ms. Crosley's threshold.  The Court also concludes that the facts

14   surrounding Officer Bancroft's decision to arrest Jelani also are genuinely in dispute.  (*See*

15   Geerhart Opp. Decl., Ex. 1 (K. Collins Depo. at 106:14-107:9), Ex. 12 (J. Collins Depo. at

16   32:21-33:9).)  Thus, because the facts surrounding the initial encounter with Jelani are disputed,

17   the Court cannot resolve the issue of whether the Defendant Officers are entitled to qualified

18   immunity on this aspect of Ms. Crosley's Section 1983 claim.

19        For these reasons, Ms. Crosley's motion is DENIED.

20   **E.    Defendants' Motion for Summary Judgment is Granted in Part and Denied in
            Part.**

21

22        Defendants move for summary judgment on Plaintiffs' first, second, fourth, sixth,

23   seventh, eighth, ninth, tenth, and fourteenth claims for relief.[11]  Defendants move not only the

24   merits of each of these claims, but also contend that, in the alternative, they are entitled to

25   qualified immunity on Plaintiffs' Federal claims for relief.

26

27        [11]    Although Defendants did not explicitly refer to the seventh claim for relief in
     their motion, Defendants asserted at the hearing that this claim for relief will rise or fall with
28   the Section 1983 claims, to the extent those claims are premised on alleged violations of the
     Fourth Amendment.

1              **1.       First Claim for Relief - Section 1983 Claims Against Defendant Officers.**

2          Section 1983 of Title 42 of the United States Code states, in pertinent part, that "[e]very

3     person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .

4     subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any

5     rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

6     party injured in an action at law." 42 U.S.C § 1983.

7          Ms. Crosley contends that the Defendant Officers violated her Fourth and Fourteenth

8     Amendment rights to be free from the use of excessive force.  Mr. Collins contends that the

9     Defendant Officers violated his Fourth Amendment right to be free from unreasonable seizures

10    and that they violated his First Amendment right to freedom of speech.

11             **a.       Ms. Crosley's Excessive Force Claim**

12         Ms. Crosley asserts her excessive force claim under both the Fourth and Fourteenth

13    Amendments, and her claim is premised upon the Defendant Officers' actions during their

14    attempt to arrest Jelani.  Under a Fourth Amendment analysis, Ms. Crosley must show that the

15    Defendant Officers' use of force was unreasonable. *Graham v. Connor*, 490 U.S. 386, 395

16    (1989).  As a threshold issue, however, Ms. Crosley must demonstrate that she was seized, and

17    a "seizure" occurs "only when government actors have, 'by means of physical force or show of

18    authority, ... in some way restrained the liberty of a citizen.'" *Id.* at 395 n.10 (quoting *Terry v.

19    Ohio*, 392 U.S. 1, 19, n.16 (1968)).

20         [A] Fourth Amendment seizure does not occur whenever there is a
      governmentally caused termination of an individual's freedom of movement
21    (the innocent passerby), nor even whenever there is a governmentally caused
      and governmentally desired termination of an individual's freedom of
22    movement (the fleeing felon), but only when there is a governmental
      termination of freedom of movement *through means intentionally applied*.
23

24    *Brower v. County of Inyo*, 498 U.S. 593, 596-97 (1989) (emphasis in original); *see also Reed v.

25    Hoy*, 909 F.2d 324, 329 (9th Cir. 1990) ("a seizure is a (1) governmental (2) termination of

26    freedom of movement (3) through means intentionally applied)).

27         "[T]he Ninth Circuit has not addressed whether *inadvertent* injuries that a police officer

28    inflicts on ... an innocent bystander while attempting to stop another person constitute a seizure

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    under the Fourth Amendment." *Edenfield v. Estate of Willets*, 2006 WL 1041724 at *7-*8 (D.

2    Hawaii Apr. 14, 2006) (emphasis added).  Although not binding, the Court finds the analysis in

3    the *Edenfield* case instructive.  In *Edenfield*, the court noted that circuits that have addressed the

4    issue, focus on the question of "to whom or at what the officers directed their physical

5    restraint."  *Id.* at *7.  In cases where the plaintiff, or other object, was the target of an officer's

6    conduct, courts have concluded that the officer effected a Fourth Amendment seizure.  *See, e.g.,*

7    *Ciminillo v. Streicher*, 434 F.3d 461, 464-66 (6th Cir. 2006) (concluding that plaintiff was "not

8    collaterally injured by an assertion of force against a third party," and, thus, was seized, and

9    finding that force used to effect seizure was unreasonable); *Fisher v. City of Memphis*, 234 F.3d

10   312, 315 (6th Cir. 2001) (plaintiff was seized when car in which she was riding was target of

11   officer's "intentionally applied exertion of force").

12       In contrast, when the plaintiff, or other object, was not the target of an officer's conduct,

13   courts have concluded that the plaintiff was not seized.  *See, e.g., Rucker v. Harford Co.*, 946

14   F.2d 278, 280-81 (4th Cir. 1991) (plaintiff, whom officers did not know was in vicinity, was shot

15   as officers fired at suspect; holding no seizure because plaintiff was not "intended object of a

16   physical restraint"); *Landol-Rivera v. Cosme*, 906 F.2d 791 (1st Cir. 1991) (plaintiff, a known

17   hostage, who was shot when officers attempted to seize hostage-taker was not "seized" because

18   officers' actions were directed at restraining the hostage taker); *cf. McKeown v. Hairston*, 2007

19   WL 1768767 at *2 (E.D. Mich. Jun. 15, 2007) (notwithstanding fact that officer had deliberate

20   contact with the plaintiff, contact was not intended to restrain plaintiff's freedom of movement).

21       A common theme of the cases that have addressed this issue is that the facts

22   demonstrated an intent, or lack thereof, to restrain the plaintiff's freedom of movement.  In this

23   case, there is sufficient evidence to suggest that Officer Pratt's contact with Ms. Crosley was

24   deliberate and that it caused her injuries.  However, much like the facts in the *McKeown* case,

25   there is no evidence to suggest, objectively, that this contact was intended to restrain Ms.

26   Crosley's freedom of movement, rather than merely to move her out of their way.  *See*

27   *McKewon*, 2007 WL 1768767 at *2; *see also Edenfield*, 2006 WL 1041724 at *10; *cf.*

28   *Ciminillo*, 436 F.3d at 465-66 (noting that circumstances surrounding deliberate action

13

demonstrated an intent to restrain plaintiff's freedom of movement).  Accordingly, the Court concludes that, even taking the facts in the light most favorable to Ms. Crosley with respect to whether his contact was intentional, the Court concludes that Officer Pratt did not "seize" Ms. Crosley.

Therefore, the Court GRANTS, IN PART, Defendants' motion on Ms. Crosley's excessive force claim, to the extent it is premised on a violation of the Fourth Amendment. Because the Defendants only moved for summary judgment on this aspect of Ms. Crosley's excessive force claim, and because the Court concludes that the substantive due process aspect of Ms. Crosley's claim was not fairly raised in the briefing, the Court's ruling does not preclude Ms. Crosely from pursuing an excessive force claim against either Defendant Officer under the rubric of the Fourteenth Amendment. *See Sacramento v. Lewis*, 523 U.S. 833, 843, 846-47 (1998) (noting that a plaintiff who cannot establish a Fourth Amendment violation may nonetheless assert an excessive force claim under the substantive due process clause of the Fourteenth Amendment by demonstrating that an officer's conduct "shocks the conscience").

### b.       Kenneth Collins' Fourth Amendment Claim.

Mr. Collins' Section 1983 claim is premised upon his allegations that he was seized in violation of the Fourth Amendment.  It is undisputed that Mr. Collins was not arrested.  Thus, this motion turns on whether Mr. Collins' contact with Officer Pratt amounted to a seizure.

Taken in the light most favorable to Mr. Collins, the facts show that the Defendant Officers approached Mr. Collins and his friends and advised them that they would need to retire to their respective balconies.  Thereafter, and in response to Mr. Collins' protests, Officer Pratt asked for Mr. Collins' identification and suggested that he would arrest him if he was trespassing.  (*Compare* Geerhart Opp. Decl., Ex. 1 (K. Collins Depo. at 85:12-90:7) *with* Ex. 6 (Bancroft Depo. at 44:10-18, 47:24-48:4, 53:9-54:7).)  However, Mr. Collins also testified that neither of the Defendant Officers advised him he was under arrest and that they did not try and prevent him from entering Ms. Crosley's home to get his identification.  Mr. Collins also testified that he had been approached by other officers on similar occasions and that most of

1  these encounters did not carry any negative repercussions.  (Geerhart Opp. Decl., Ex. 1 (K.

2  Collins Depo. 27:31-33:4, 40:3-10, 46:2-47:4; 94:17-23).)

3         Taking these facts in the light most favorable to Mr. Collins, and accepting as true that

4  Officer Pratt stated that he would arrest Mr. Collins, the Court concludes that the circumstances

5  surrounding the situation were not so intimidating that a reasonable person would not have felt

6  free to leave and, thus, that Mr. Collins was not seized.  *See Brendlin v. California*, __ U.S. __,

7  127 S.Ct. 2400, 2405 (2007); *United States v. Christian*, 356 F.3d 1103, 1106-07 (9th Cir. 2004)

8  (noting that a request for identification by police alone does not constitute a seizure).[12]

9  Accordingly, the Defendants' motion is GRANTED as to this aspect of Mr. Collins' Section

10  1983 claim.

11                **c.     Kenneth Collins' First Amendment Claim.**

12         Mr. Collins also contends that the Defendant Officers violated his First Amendment

13  rights.  In order to establish this claim, Mr. Collins must show that: (1) he engaged in protected

14  speech; (2) the Defendant Officers retaliated against him for engaging in such speech; and (3)

15  the Defendant Officers' actions were substantially motivated by his speech.  *See, e.g., Sloman v.*

16  *Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).  With respect to the second prong of this test, the

17  Ninth Circuit has stated that the proper inquiry is "whether an official's acts would chill or

18  silence a person of ordinary firmness from future First Amendment activities."  *Mendocino*

19  *Environmental Center v. Mendocino Co.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting

20  *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds*, 520 U.S.

21  1273 (1997)); *see also Bennet v. Hendrix*, 427 F.3d 1247, 1250-51 (11th Cir. 2005) (noting that

22  majority of circuits use objective test and that adverse action occurs where retaliatory conduct

23  sufficient to deter exercise of First Amendment rights).

24         Mr. Collins premises this claim on the fact that Officer Pratt threatened to arrest him for

25  trespassing after Mr. Collins expressed his displeasure with the Defendant Officers' request that

26

27         [12]    Plaintiffs' reliance on *Lawson v. Kolender*, 658 F.3d 1362 (9th Cir. 1981),
   *aff'd, Kolender v. Lawson*, 461 U.S. 352 (1983), *Carey v. Nevada Gaming Comm'n*, 279

28  F.3d 873 (9th Cir. 2002), and *Martinelli v. City of Beaumont*, 820 F.2d 1491 (9th Cir. 1987) is
   misplaced because those cases stand for the proposition that a person cannot be arrested for
   failure to identify oneself.

1    he and his friends move to their balconies.  The motion is GRANTED as to Officer Bancroft,

2    because there is no evidence to suggest that he violated Mr. Collins' First Amendment rights.

3    Because the facts are disputed as to what Officer Pratt actually said, Defendants' motion is

4    DENIED as to Officer Pratt.  Furthermore, if the Court accepts as true the fact that Officer Pratt

5    did threaten to arrest Mr. Collins, a threat which came after Mr. Collins expressed his

6    displeasure with the Defendant Officers' conduct, the Court concludes that there are sufficient

7    facts to suggest the threat was retaliatory in nature and that Officer Pratt's actions were

8    substantially motivated by Mr. Collins' protests.  Because the law on this point was clearly

9    established as of July 1, 2005, a reasonable officer would not have believed his conduct was

10   lawful.  *See McKinney v. Nielson*, 69 F.3d 1002, 1007 (9th Cir. 1995) ("Ninth Circuit law also

11   clearly establishes the right to verbally challenge the police," and that "police may not exercise

12   'the awesome power at their disposal to punish individuals for conduct that is not merely

13   lawful, but protected by the First Amendment'") (quoting *Duran v. City of Douglas*, 904 F.2d

14   1372, 1378 (9th Cir. 1990)).  Therefore, Officer Pratt is not entitled to qualified immunity on this

15   aspect of Mr. Collins' Section 1983 claim.

16          **2.      Second Claim for Relief - Section 1983 Claims Against City Defendants.**

17          Plaintiffs also assert a cause of action against the City Defendants under Section 1983.

18   Plaintiffs contend that the City Defendants "instilled a policy or custom of harassing law

19   abiding citizens who simply wanted to be left alone on the streets,"[13] and have a pattern and

20   practice of "the use of unnecessary and excessive force against citizens and false arrests of

21   citizens."  (Plaintiffs' Opp. at 23:20-21; FAC, ¶ 29.)

22          "Under Section 1983, supervisory officials are not liable for actions of subordinates on

23   any theory of vicarious liability."  *Hanson v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citing

24   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  "A supervisor may be liable if there

25   exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

26   sufficient causal connection between the supervisor's wrongful conduct and the constitutional

27

28          [13]      Plaintiffs postulate that this custom and policy was the moving force for the
     July 1, 2005 incident.  (Plaintiffs' Opp. at 23:19-26.)

United States District Court

For the Northern District of California

1   violation."  *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).  Where there is

2   no overt participation in the allegedly wrongful act, supervisory liability can be established

3   when the supervising officials implement "a policy so deficient that the policy 'itself is a

4   repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

5   *Id.* (quoting *Thompkins*, 828 F.2d at 304); *cf. Munger v. City of Glasgow*, 227 F.3d 1082, 1087

6   (9th Cir. 2000) ("The 'inadequacy of police training may serve as the basis for § 1983 liability

7   only where the failure to train amounts to deliberate indifference to the rights of persons with

8   whom the police come into contact.'" ) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388

9   (1989)).

10          With respect to the City, "Congress did not intend municipalities to be held liable unless

11  action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*

12  *v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978).  Thus, to establish that the

13  City is liable, Plaintiffs must show that: (1) they had a constitutional right of which they were

14  deprived; (2) the City had a custom created by those who may be fairly said to determine

15  official policy, which amounted to, at a minimum, deliberate indifference to Plaintiffs'

16  constitutional rights; and (3) the custom was the moving force behind the constitutional

17  violation.  *See Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000); *see also Oviatt v.*

18  *Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

19          To establish the requisite policy regarding unconstitutional seizures, Plaintiffs rely on

20  the Reiter Report and on testimony from Chief Baker, Lt. Raman and Sgt. Haase.  Chief Baker

21  did testify that, in certain situations, he would expect officers to follow up with a person who

22  requested to be left alone.  (*See, e.g.,* Geerhart Opp. Decl., Ex. 8 (Baker Depo. at 39:21-42:25).)

23  Chief Baker, however, also testified that he did not have a policy by which he expected officers

24  to "follow up with people hanging out in front of apartments like Loveridge Terrace."  (*Id.* at

25  55:23-56:3; *see also* Geerhart Opp. Decl., Ex. 9 (Deposition of Lt. Ron Raman ("Raman

26  Depo.") at 19:24-20:3 (the department did not have a policy about making contact with people

27  on the sidewalks at Loveridge Terrace).)

28

United States District Court

For the Northern District of California

1    Indeed, Chief Baker made it very clear that the factual circumstances surrounding a

2 particular encounter between one of his officers and a citizen would determine how he would

3 expect the officer to react.  (*See* Geerhart Opp. Decl., Ex. 8 (Baker Depo. at 32:12-14, 32:23-

4 37:3, 37:25-38:21), Ex. 9 (Raman Depo. at 22:10-26:12, 28:10-16 (detailing types of

5 encounters, and noting that if a citizen requested to be left alone and was not violating the law

6 or if there were no other circumstances warranting further investigation, officer would end

7 contact).)[14]  Plaintiffs do not submit any City training manuals or procedures with respect to

8 investigatory stops or arrests, and although Lt. Raman provided some testimony about these

9 manuals, his testimony does not support Plaintiffs' claims of an unconstitutional policy.  (*See*

10 Geerhart Opp. Decl, Ex. 9 (Raman Depo. at 35:13-37:20).)  The Court concludes that Plaintiffs

11 have not met their burden to show that a genuine issue of material fact is in dispute on this

12 aspect of their Section 1983 claim against the City Defendants.

13    Plaintiffs also premise their claims against the City Defendants on allegations that there

14 is a pattern and practice of Pittsburg police officers using excessive force during the course of

15 arrests.  Again, Plaintiffs do not submit any training manuals or procedures on this issue, nor

16 have they submitted any evidence of other similar incidents.[15]  Rather, Plaintiffs rely only on the

17 facts surrounding this incident.  The Court concludes that this evidence is insufficient to create a

18 genuine issue of material fact on whether the City Defendants had a custom or policy regarding

19 the use of excessive force.  *See, e.g., Davis v. Mason Co.*, 927 F.2d 1473, 1482-83 (9th Cir.

20 1991) (affirming judgment as a matter of law against city on failure to train claim involving

21 four incidents of excessive force and *where evidence showed officers had received no training*

22

23    [14]    In his expert report, Mr. Reiter opines that Chief Baker ratified the Defendant
Officers' "improper" conduct in this case and that the conduct was consistent with the
"operational policy" of the Pittsburg Police Department.  (Geerhart Opp. Decl., Ex. 15
24 (Reiter Report, ¶16.)  For the reasons set forth in the text, there is insufficient evidence in the
record to infer from Chief Baker's testimony that an unconstitutional policy exists.  Thus, the
25 Court concludes that the Reiter Report also does not create a genuine issue of material fact
with regard to Plaintiffs' Section 1983 claims against the City Defendants.
26

27    [15]    Lt. Raman did testify about a portion of a city training manual but he provides
no detail about what the terms of the manual include, and his testimony about the general
28 nature of what factors are to be considered by officers is not sufficient to create a genuine
issue of material fact on the existence of a pattern or practice of the use of excessive force.
(Geerhart Opp. Decl, Ex. 9 (Raman Depo. at 41:11-45:3.)

18

1  *on constitutional limits on use of force*), *overruled on other grounds in Davis v. City and Co. of*

2  *San Francisco*, 976 F.2d 1536 (9ᵗʰ Cir. 1992); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235

3  (9ᵗʰ Cir. 1989) (affirming summary judgment in favor of city where plaintiff put forth no

4  evidence of acts of excessive force other than incident in question).

5        Accordingly, the Court GRANTS the City Defendants' motion on this claim for relief.

6        **3.**      **Fourth Claim for Relief - Violations of Article I, Sections 7(a) and 13 of the California Constitution.**

7

8        Plaintiffs allege that the Defendant Officers' actions violated their right to be free from

9  unreasonable searches and seizures under Article I, Section 13 of the California Constitution,

10  and also violated their right not to be deprived of liberty and property without due process of

11  law, under Article I, Section 7(a) of the California Constitution.  For the reasons set forth above

12  with respect to Plaintiffs' First Claim for Relief, Defendants' motion is GRANTED IN PART

13  AND DENIED IN PART on this claim for relief.

14        **4.**      **Sixth Claim for Relief - Violations of California Civil Code § 52.1.**

15        Plaintiffs also assert violations of their civil rights pursuant to California Civil Code §

16  52.1, the Tom Bane Civil Rights Act.  Section 52.1 provides, in pertinent part,:

17        Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this

18        state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her

19        own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the

20        peaceable exercise or enjoyment of the right or rights secured.

21  Cal. Civ. Code § 52.1(b).

22        The California Supreme Court has explained that this section provides a remedy for

23  "certain misconduct that interferes with" the exercise of rights under federal or state laws, if that

24  misconduct is accompanied by threats, intimidation or coercion.  *Austin B. v. Escondido School*

25  *Dist.*, 149 Cal. App. 4ᵗʰ 860, 882 (2007); *see also Jones v. Kmart Corp.*, 17 Cal. 4ᵗʰ 329, 338

26  (1998).  In light of the Court's findings on Mr. Collins' Section 1983 claim, premised on

27  alleged First Amendment violations, and on Ms. Crosley's Section 1983, to the extent it is

28  premised on the Fourteenth Amendment, Defendants' motion is DENIED.  To the extent this

1    claim also is premised on the Plaintiffs' allegations that they were seized, for the reasons

2    previously set forth in this Order, Defendants' motion is GRANTED.

3         **5.      Seventh Claim for Relief - False Arrest and Imprisonment.**

4         Plaintiffs also contend that the Defendant Officers falsely imprisoned them. "The tort of

5    false imprisonment is the nonconsensual, intentional confinement of a person, without lawful

6    privilege, for an appreciable length of time, however short." *City of Newport Beach v. Sassev*, 9

7    Cal. App. 3d 803, 810 (1970). That is, if a person is "wrongfully deprived of his freedom to

8    leave a particular place by the conduct of another," that person has been falsely imprisoned.

9    *Schanafelt v. Seaboard Finance Co.*, 108 Cal. App. 2d 420, 422-23 (1951). Because the Court

10   concludes that, taking the facts in the light most favorable to both Mr. Collins and Ms. Crosley,

11   the Defendant Officers did not seize either Plaintiff, and because the parties agreed that this

12   claim rises and falls with the Fourth Amendment claims, the Court concludes that Defendants'

13   motion must be GRANTED on this claim for relief.

14        **6.      Eighth Claim for Relief - Battery.**

15        To establish her claim for battery, Ms. Crosley must show that the Defendant Officers

16   touched her with the intent to cause her harm, that she did not consent to be touched, and that

17   she was harmed by the Defendant Officers' conduct. *See, e.g., Ashcraft v. King*, 228 Cal. App.

18   3d 604, 611 (1991); CACI 1300. As to Officer Pratt, although the contact may not arise to the

19   level of a seizure, the Court concludes that there are genuine issues of fact in dispute with

20   respect to whether his contact with Ms. Crosley was intentional. Further, as to Officer

21   Bancroft, his incident report suggests that he knew Ms. Crosley was in his path as he attempted

22   arrest Jelani. Accordingly, Defendants' motion is DENIED on this claim for relief.

23        **7.      Ninth and Tenth Claims for Relief - Intentional Infliction of Emotional
               Distress.**
24

25        To establish a claim for intentional infliction of emotional distress, Plaintiffs must show:

26   "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the

27   probability of causing emotional distress, (3) severe emotional suffering and (4) actual and

28   proximate causation of the emotional distress." *See, e.g., Cole v. Fair Oaks Fire Dept.*, 43 Cal.

United States District Court
For the Northern District of California

3d 148, 155 n.7 (1987).  As the court noted in *Cole*, this tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress." *Id.*  Further, behavior "may be considered outrageous if a defendant ... abuses a relation or position which gives him power to damage the plaintiff's interest." *Id.*

The Defendant Officers assert that Plaintiffs cannot establish the first and second element of this claim.  For the reasons set forth with respect to Ms. Crosley's Section 1983 claim, premised on violations of the Fourteenth Amendment, and with respect to her battery claim, the Court finds that Ms. Crosley has met her burden to overcome Defendants' motion for summary judgment.  *Cf. Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n.17 (9th Cir. 2007) (reversing grant of summary judgment on intentional infliction of emotional distress claim for relief premised on an alleged use of excessive force, where there were disputed issues of fact on whether defendants' use of force was lawful).

However, the Court concludes, as a matter of law, that the facts do not support a claim for intentional infliction of emotional distress as to Mr. Collins, who premises his claim upon witnessing the injuries to Ms. Crosley.  (*See* FAC, ¶¶55-56.)  *See, e.g., Ochoa v. Superior Court*, 39 Cal. 3d 159, 165 n.5 (1985) (sustaining demurrer on parents claim for intentional infliction of emotional distress based on injuries to child where defendants had not acted purposefully to cause parents' emotional distress and the fact that the defendants' actions were not "especially calculated" to cause parents emotional distress was fatal to their claim).

Accordingly, Defendants' motion is GRANTED IN PART AND DENIED IN PART on this claim for relief.

### 8.    Fourteenth Claim for Relief - Negligent Selection, Training, Retention, Supervision, Investigation and Discipline.

Defendants moved for summary judgment on all aspects of this claim for relief.  In response to Defendants' motion, Plaintiffs alluded to the negligent hiring aspect of the claim. However, Plaintiffs put forth no evidence to dispute the evidence offered by the City Defendants that Officers Pratt and Bancroft were newly hired, had no history of physical

United States District Court

For the Northern District of California

1  confrontations with civilians, and have had no citizen's complaints filed against them.  As such,

2  Plaintiffs have not established that the City Defendants were negligent in hiring them.  *See*

3  *Board of Commissioners v. Brown*, 520 U.S. 397, 412 (1997) (in order to establish negligent

4  hiring, plaintiff must show that the particular officer hired was likely to inflict the particular

5  injury alleged).

6        With respect to the training and supervision aspect of this claim, Plaintiffs rely on the

7  testimony of Chief Baker, Lt. Raman, and Sgt. Haase to establish the manner in which the City

8  Defendants train their officers.  For the reasons set forth in the Court's discussion of the Section

9  1983 claim against the City Defendants, the Court concludes that this evidence is insufficient to

10 create a genuine issue of material fact on the issue of whether the City Defendants were

11 negligent in training and supervising their officers.  *See Merritt v. County of Los Angeles*, 875

12 F.2d 765, 769-70 (9th Cir. 1989) (finding that plaintiff's only evidence of inadequate training

13 was his own arrest and that a single incident was insufficient to establish policy of inadequate

14 training).

15       Finally, Plaintiffs have not responded to the City Defendants' arguments on the

16 negligent retention, investigation, and discipline aspect of this claim for relief.   Accordingly,

17 Defendants' motion is GRANTED on this claim for relief.

**CONCLUSION**

18

19       For the foregoing reasons, Ms. Crosley's motion for partial summary judgment is

20 DENIED.  Defendants' motion for summary judgment is GRANTED IN PART and DENIED

21 IN PART.

22       IT IS FURTHER ORDERED that the parties shall appear on December 21, 2007, at

23 10:00 a.m., before Magistrate Judge James for a further settlement conference.  In the event the

24 parties are unable to resolve the matter, they are ORDERED to appear for a further case

25 management conference on January 18, 2008 at 1:30 p.m.  The parties shall submit a further

26 case management conference statement on January 11, 2008, setting forth proposed dates for

27

28

the pretrial conference and trial.

        **IT IS SO ORDERED.**

Dated: November 26, 2007

                                            JEFFREY S. WHITE
                                            UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California